Case 6:15-cv-01933-RBD-DAB   Document 27   Filed 03/24/16   Page 1 of 9 PageID 183

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IRIS AYALA RODRIGUEZ,

        Plaintiff,

v.
                                  Case No. 6:15-cv-1933-Orl-37DAB

21st CENTURY NORTH AMERICA
INSURANCE COMPANY,

        Defendant.

---

### ORDER

This cause is before the Court on the following:

1.     Defendant's Motion to Dismiss (Doc. 5), filed September 29, 2015;

2.     Plaintiff's Amended Response to Defendant's Motion to Dismiss with Integrated Memorandum of Law (Doc. 10), filed October 28, 2015; and

3.     Joint Motion to be Excused from Conducting Case Management Conference in Person (Doc. 17), filed November 20, 2015.

### BACKGROUND

Based on diversity jurisdiction—28 U.S.C. § 1332—Plaintiff Iris Ayala Rodriguez ("**Plaintiff**") initiated this state law action against her insurer, Defendant 21st Century North America Insurance Company ("**Century Insurance**"). (*See* Doc. 1, ¶¶ 6–7, 19–21.) Century Insurance appeared and filed motions requesting: (1) transfer of the action from the Tampa Division to the Orlando Division of this Court (*see* Doc. 6 ("**Transfer Motion**")); and (2) dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see* Doc. 5 ("**Rule 12 Motion**")). Plaintiff responded to both motions (*see* Docs. 9–11), and U.S. District Judge James D. Whittemore granted the Transfer Motion (*see* Doc. 14).

Upon transfer to the Orlando Division (*see* Doc. 15), the parties promptly filed a Case Management Report (Doc. 18) and a joint motion to be excused from conducting a second case management conference "in person" ("**Joint Motion**"). (Doc. 17, ¶¶ 2–4 (representing that the parties previously conducted their CMC while the action was pending in the Tampa Division).) Because the Court entered its Case Management and Scheduling Order on December 9, 2015 (Doc. 22), and no disputes have arisen concerning case management issues, the Joint Motion is due to be denied as moot. For the reasons set forth below, the Rule 12 Motion also is due to be denied.

### FLORIDA'S BAD FAITH LAW

Section 624.155 of the "Florida Insurance Code"[1] provides a civil remedy to persons who are "damaged" by—among other things—an insurer's commission of certain prohibited acts related to claim settlement ("**Prohibited Acts**") or by an insurer's violation of specific "claim settlement practices" ("**Settlement Practices**") set forth in the "Unfair Insurance Trade Practices Act" ("**UITPA**").[2] *See* Florida Statutes, § 624.155(1) (2015); *see also id.* § 626.9541(i) (detailing the Settlement Practices). The Prohibited Acts are:

---

[1] Insurance is a highly-regulated business; and, the Florida Insurance Code—which is comprised of Chapters 624–632, 634–636, 641–642, 648, and 651—is fairly described as Byzantine. *See* § 624.01, Florida Statutes (2015).

[2] Section 624.155(1)(a) also affords a civil remedy to persons damaged by certain discrimination and financial misconduct in the insurance industry. For instance, insurers may be subject to a civil remedy if they discriminate against policyholders or applicants based on a person's "race, color, creed, marital status, sex, or national origin" (*see* § 626.9541(x)(1)), "severe disability" (*see* § 626.9705), or "sickle-cell trait" (*see* §§ 626.9706 & .9707). Unless reasonably related to an insured risk, insurers also may be subject to a civil remedy for discriminating based on a person's "residence, age, or lawful occupation." (*See* § 626.9541(x)(2).) Finally, a civil remedy is available from persons who: (1) knowingly collect certain premiums (*see* § 627.9541(o)); (2) improperly handle unearned premiums upon cancellation of a motor vehicle insurance policy (*see* § 627.7283); or (3) condition the issuance of credit or a loan on the borrower's purchase of an insurance policy from a particular source (*see* § 626.9551).

(1)     Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;

(2)     Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or

(3)     Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

*See id.* § 624.155(1)(b)(1–3). These provisions are referred to as the "**Bad Faith Statute**" and an action for a civil remedy arising from these provisions is a "**Bad Faith Claim.**" *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 546 (Fla. 2012); *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 456 (Fla. 2006).

An insurer may not be sued under the Bad Faith Statute until it receives notice of the claim and at least sixty days—the "**Cure Period**"—to pay the insurance proceeds or to correct "the circumstances giving rise to the claim" ("**Notice Requirement**").[3] *See* Florida Statutes, § 624.155(3)(d) (2015); *see also id.* at § 624.155(3)(a). The Cure Period is triggered when a "proper" civil remedy notice ("**CRN**") is submitted to Florida's Department of Insurance ("**Department**"). *See id.* at § 624.155(3)(a). A "proper" CRN must "be on a form provided by" the Department, and it must "state with specificity" at least the following ("**Required Information**"):

---

[3] *See Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000) (noting that the sixty-day "window" provides insurers with a final opportunity "to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed"); *see also Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) (describing an insurer's "appropriate response").

1.   The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated;

2.   The facts and circumstances giving rise to the violation;

3.   The name of any individual involved in the violation;

4.   If the person bringing the civil action is a first-party claimant, "then reference to specific policy language that is relevant to the violation, if any"; and

5.   A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

*See id.* at § 624.155(3)(b). A CRN that "does not provide" this Required Information may be returned by the Department with an indication of the "specific deficiencies." *See id.* at § 624.155(3)(c).

## THE COMPLAINT

Plaintiff alleges that in **January 2010**: (1) she was insured by Century Insurance under motor vehicle policy number 492 31 08 ("**Policy**"), which provided up to **$100,000.00** ("**UM Limits**") in uninsured motorist benefits ("**UM Benefits**"); and (2) she was involved in a motor vehicle accident ("**Accident**") that was caused by the negligence of an underinsured motorist ("**UM Motorist**") and resulted in serious bodily injury to Plaintiff. (*See* Doc. 1, ¶¶ 3, 5–11, 13, 18–21, 27–34; *see also* Doc. 1-1, pp. 3, 5–10.) Century Insurance allegedly rejected Plaintiff's claim for UM Benefits ("**UM Claim**"), and Plaintiff filed a CRN. (*See* Doc. 1, ¶¶ 15–19; Doc. 1–1, pp. 35–38.) After Century Insurance allegedly failed to act during the Cure Period, Plaintiff filed a coverage action in State Court ("**Coverage Action**"), and she prevailed against Century Insurance.

According to Plaintiff, Century Insurance "failed to act in good faith in settling" the UM Claim "when under all the circumstances, it could and should have done so had it

acted fairly and honestly" toward Plaintiff. (*See* Doc. 1, ¶¶ 19, 21.) Specifically, Plaintiff

alleges that Century Insurance violated Settlement Practices and committed Prohibited

Acts, by:

    a.    Failing to adopt and implement standards for the proper investigation of claims;

    b.    Failing to acknowledge and act promptly upon communications with respect to the Plaintiff's claim;

    c.    Denying the Plaintiff's claim without conducting reasonable investigations based upon available information;

    d.    Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

    e.    Failing to properly investigate the Plaintiff's claim;

    f.    Failing to properly evaluate the Plaintiff's claim;

    g.    Failing to properly negotiate Plaintiff's claim;

    h.    Failing to make a reasonable offer to settle the [Coverage Action];

    i.    Failing to tender the [UM Limits]; and

    j.    Failing to properly train adjusters and claims personnel for the types of claims which would be undertaken by those employees.

(*See id.* ¶ 20.) Plaintiff concludes that Century Insurance is liable to her under the Bad

Faith Statute. (*See id.*)

## DISCUSSION

In its Rule 12 Motion, Century Insurance argues that the Court should dismiss the

Complaint in its entirety because Plaintiff did not satisfy the Notice Requirement. (*See*

Doc. 5.) According to Century Insurance, Plaintiff's CRN is fatally deficient because it

does not explicitly reference the statutory subsections that are implicitly referenced in the

Complaint.[4] (*See id.* at 5–6.) Plaintiff counters that Century Insurance's piecemeal comparison of the Complaint to the CRN is not supported by Florida law, and—viewed as a whole—her CRN provided Century Insurance with sufficient notice of her Bad Faith Claim. (*See* Doc. 10, pp. 3–6 (noting that the blank CRN form provided by Florida's Department of Insurance "contains limited space and is not intended to include an exhaustive list of all matters" that may ultimately be alleged in a bad faith action).)

In resolving the Rule 12 Motion, the Court must limit its review to the Complaint and attached exhibits, accept the factual allegations in the Complaint as true, and construe the factual allegations in the light most favorable to the Plaintiff. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Based on this analysis, the Court should grant the Rule 12 Motion if it finds that Plaintiff's CRN provided facially insufficient notice to Century Insurance of the statutory violation to be cured. *See Bollinger v. State Farm Mut. Auto. Ins. Co.*, 538 F. App'x 857, 864–65 (11th Cir. 2013) (affirming dismissal of Bad Faith Claim where the Notice Requirement "admittedly" was not met); *Ardrey v. USAA Cas. Ins. Co.*, No. 8:12-cv-08-T-24MAP, 2012 WL 831620, at *3–*4 (M.D. Fla. Mar. 12, 2012) (dismissing unfair settlement practice count because the CRN attached to the complaint did not "identify § 626.9541 as a statute that was violated").[5] On the other

---

[4] To illustrate this argument, Century Insurance provides a chart that: (1) cites discrete subsections from § 624.155 and from § 626.9541; (2) corresponds each discrete subsection with an allegation set forth in paragraphs 19 and 20(a) through 20(d) of the Complaint; and (3) concludes that the CRN does not reference the discrete statutory subsections cited in the chart. (*See* Doc. 5, pp. 5–6.) The Chart also indicates that no statutory subsection corresponds to the factual allegations set forth in paragraphs 20(e) through 20(j). (*See id.*)

[5] *See also Borrego v. State Farm Mut. Auto. Ins. Co.*, No. 14-20365-CIV, 2014 WL 2615192, at *4 (S.D. Fla. Apr. 30, 2014) (dismissing a Bad Faith Claim for loss of consortium brought by spouse who was not referenced in CRN); *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 665 F.Supp.2d 1355, 1360–61

hand, the Court should deny the Rule 12 Motion, if the Complaint sets forth factual allegations that Plaintiff satisfied the Notice Requirement and prevailed against Century Insurer in a coverage action.[6] *See Porcelli v. OneBeacon Ins. Co.*, 635 F.Supp.2d 1312, 1318–19 (M.D. Fla. 2008) (denying motion to dismiss and holding that holding that plaintiff sufficiently pled compliance with pre-suit notice).[7]

The Complaint plainly provides sufficient allegations concerning Plaintiff's success in the Coverage Action in that Plaintiff obtained: (1) a jury verdict in her favor "in the amount of **$934,000.00**" ("**Verdict**") (*see* Doc. 1-1, pp. 39–40); and (2) entry of judgment against Century Insurance for the UM Limits ("**Judgment**").[8] (*See id.* at 41–42.) Further, viewed in the light most favorable to Plaintiff, the Complaint and attached CRN permit the plausible inference that Plaintiff satisfied the Notice Requirement.[9]

---

(S.D. Fla. 2009) (dismissing Bad Faith Claim against parent company where CRN referenced only a subsidiary insurer).

[6] Specifically, the coverage action must have established the "extent of the plaintiff's damages" and the "existence of liability on the part of the insurer." *See Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1233 (Fla. 2006). Here, both matters are covered in the Complaint.

[7] *See also Baham v. Prop. & Cas. Ins. Co. of Hartford*, No. 8:14-cv-2772-T-36MAP, 2015 WL 1471275, at *4 (M.D. Fla. Mar. 31, 2015) (denying insurer's motion to dismiss related to CRN); *Eads v. Allstate Indem. Co.*, No. 14-CIV-61691, 2014 WL 6453178, *5 (S.D. Fla. Nov. 17, 2014) (declining to dismiss bad faith claim for lack of pre-suit notice); *Canales v. Am. Sec. Ins. Co.*, No. 8:11-cv-789-T-33AEP, 2011 WL 535673, at *4 (M.D. Fla. Nov. 7, 2011) (rejecting argument that CRN was deficient and denying insurer's motion to dismiss); *O'Leary v. First Liberty Ins. Corp.*, No. 8:10-cv-1625-T-23TBM, 2010 WL 3610446, at *3 (M.D. Fla. Sept. 14, 2010) (same).

[8] Attached to the Complaint are copies of the CRN, the Verdict, and the Judgment. (*See* Doc. 1–1, pp. 35–38, 41–42.)

[9] The Court notes that some of the parties' arguments require consideration of matters outside the pleadings—such as the purported acceptance of the CRN by the Department and the purported failure of Century Insurance challenge the sufficiency of the CRN during the Cure Period. The Court's assessment of the Complaint and CRN was not impacted by such matters.

Plaintiff submitted her CRN in writing and on the form provided by the Department. (Doc. 1-1, pp. 35–36.) She identified herself, Century Insurance, the Policy and number designated for her UM Claim. In the "Reason for Notice" portion of the form, Plaintiff wrote:

> Unsatisfactory Settlement Offer
>
> Claim Denial
>
> Claim Delay

(*Id.* at 36.) In another section of the form, Plaintiff set forth the following narrative concerning the grounds for her claim:

> [Century Insurance] unreasonably refuses to pay its policy limits to resolve her uninsured motorist claim. In fact, the insurer refuses to make a reasonable settlement offer on such claim in response to their insured's offer of settlement. Further, the insurer has failed to timely comply with the specific terms of their insured's offer of settlement, thereby necessitating a very expensive lawsuit and trial. This civil remedy notice is being served to give the carrier one final opportunity to treat its insured fairly by paying the policy limits of $100,000.00.

(*Id.*)

Overall, the narrative and other information set forth in the CRN satisfied the Notice Requirement in that it adequately informed Century Insurance that Plaintiff is charging Century Insurance with engaging in Prohibited Conduct, and that she intended to assert a Bad Faith Claim against Century Insurance at the conclusion of the Cure Period. Further, it would make little sense to narrow Plaintiff's Bad Faith Claim based on the CRN because "the question of bad faith extends to the insurer's 'entire conduct in the handling of the claim.'" *See Kafie v. NW. Mut. Life Ins. Co.*, 834 F. Supp. 2d 1354, 1359 (S.D. Fla. 2011) (quoting *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004)).[10] Accordingly,

---

[10] *See also Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980); *Jaimes v. GEICO Gen. Ins. Co.*, 534 F. App'x 860, 865–66 (11th Cir. 2013));

the Rule 12 Motion is due to be denied.[11]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Defendant's Motion to Dismiss (Doc. 5) is **DENIED**.

2.      Joint Motion to Be Excused From Conducting Case Management

Conference in Person (Doc. 17) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 23, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

*Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1276 (11th Cir. 2007).

[11] Although the CRN is sufficient to withstand the Rule 12 Motion, the Court agrees with Defendant that additional statutory subsections should have been cited in the CRN. As noted above, *supra* note 2, the civil remedy provided under § 624.155(1)(a) covers varied and discrete statutory provisions covering a broad range of conduct related to the insurance industry. It is the breadth and variety of conduct giving rise to a civil remedy that warrants the requirement that a CRN identify the statutory provision at issue. Thus, had Plaintiff filed suit against Century Insurance concerning a matter unrelated to settlement of her UM Claim—such as a discrimination claim—her CRN would not satisfy the Notice Requirement. Here, that is far from the case. Although a complete and flawless CRN would have referenced subsection (1)(b)(1) as well as (1)(b)(3)—and possibly subsection (1)(a)(1) and subsections of the UITPA as well—such omissions do not bar Plaintiff's Bad Faith Claim at the pleading stage.